IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORDA RUMBAUA, | ) Case No. 11-1998 SC |
| Plaintiff, | ) ORDER RE: DEFENDANT'S |
| v. | ) MOTIONS TO DISMISS |
| | ) <u>AND TO STRIKE</u> |
| WELLS FARGO BANK, N.A.; EXECUTIVE TRUSTEE SERVICES, LLC dba ETS SERVICES, LLC; and DOES 1-10, inclusive; | ) |
| Defendants. | ) |

## I.  INTRODUCTION

Before the Court is a fully briefed motion by Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") seeking dismissal of the Complaint filed by Plaintiff Lorda Rumbaua ("Plaintiff"). ECF Nos. 15 ("MTD"), 18 ("MTD Opp'n"), 20 ("MTD Reply").[1]  Wells Fargo also moves to strike portions of Plaintiff's Complaint.  ECF Nos. 16 ("MTS"), 19 ("MTD Opp'n"), 21 ("MTS Reply").  For the following reasons, the Court GRANTS Wells Fargo's MTD and DENIES Wells Fargo's MTS as moot.

---

[1] Defendant ETS Services, LLC ("ETS") has not participated in this action.  While Wells Fargo alleged in its Notice of Removal that ETS would file a declaration of non-monetary status pursuant to Cal. Civ. Code § 2924l, it has yet to do so.

## II. BACKGROUND

As it must on a Rule 12(b)(6) motion, the Court assumes the truth of the well-pleaded facts in Plaintiff's Complaint.[2] Plaintiff is a California resident. Compl. ¶ 1. In 2000, she purchased a home located at 709 Larch Avenue, South San Francisco, California ("the property"). Id. ¶¶ 1, 6. In 2006, Frederick Joson ("Joson"), a representative of Wachovia Mortgage, FSB ("Wachovia"), advised Plaintiff to refinance her loan with Wachovia. Id. ¶ 63.[3] Joson allegedly told Plaintiff that the new loan would have a lower interest rate and a lower monthly payment than Plaintiff's current loan, "and that Plaintiff would be able to obtain cash out of the proceeds from the new loan." Id. ¶ 66. In 2006, Plaintiff obtained a loan from World Savings; the loan was secured by a Deed of Trust executed and delivered to World Savings. Id. ¶¶ 6, 7. Plaintiff alleges that "within the past three years prior to the filing of this action," she realized that Joson's statements were false, and that under the new loan, both her interest rates and monthly payments were higher. Id. ¶ 71.

---

[2] However, the Court does not accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

[3] Plaintiff alleges -- and Defendant concedes -- that Wachovia was formerly known as World Savings Bank, FSB ("World Savings"), and is now a division of Wells Fargo. See Compl. ¶ 1, MTD at 1. Plaintiff's Complaint appears to use these names interchangeably and somewhat confusingly. For example, in 2006, Wachovia was still known as World Savings, but Plaintiff claims she entered into loan refinance discussions with a "Wachovia" representative in 2006, resulting in a loan from "World Savings." Compl. ¶¶ 6-7, 63-66.

2

Plaintiff alleges that on or about February 16, 2010, Plaintiff telephoned Wells Fargo and requested a modification of her loan "as she was finding it difficult to make monthly mortgage payments." Id. ¶ 16. Wells Fargo's representative allegedly told Plaintiff that Wells Fargo could not help Plaintiff, but that she should default on her loan and that once Plaintiff was in default, Wells Fargo would modify her loan. Id. In reliance on these statements, Plaintiff defaulted on her loan. Id. ¶ 17.

Also in February 2010, a Wells Fargo representative allegedly told Plaintiff that she needed to show more income to qualify for modification, "and that Plaintiff should rent out part of her house." Id. ¶ 21. Plaintiff alleges that she entered into a written rental agreement, renting out a portion of her home for $1200 per month. Id. ¶ 22. Plaintiff alleges that she submitted all the documents requested by Wells Fargo with respect to modification, but that "Wells Fargo claimed, time and time again, that they were missing some documents or that they had not received the documents." Id. ¶¶ 18, 19.

Plaintiff alleges that in mid-September 2010, a Wells Fargo representative named Joy told Plaintiff that her home was being foreclosed upon and that there was nothing that Plaintiff or Wells Fargo could do to stop the foreclosure sale. Id. ¶¶ 24-26. On September 23, 2010, the property was sold by the trustee, Defendant Executive Trustee Services ("ETS"), via non-judicial foreclosure. Id. ¶ 11. Wells Fargo filed an unlawful detainer action in California Superior Court for San Mateo County to evict Plaintiff from the property. Id. ¶ 56. Judgment was entered in

favor of Wells Fargo, and Plaintiff's appeal of this judgment is currently pending. Id.

On March 7, 2011, Plaintiff commenced this action in California Superior Court for San Mateo County; Defendant removed to federal court on April 22, 2011. See Notice of Removal. In her Complaint, Plaintiff brings nine causes of action. First, she seeks to set aside the foreclosure sale under California Civil Code § 2924. Compl. ¶¶ 1-14. Second, she brings a claim for negligent misrepresentation against Wells Fargo, alleging that she detrimentally relied on the statements of Wells Fargo's representatives in February 2010 that she would qualify for a modification if she defaulted and the statement of Wells Fargo's representative in September 2010 that there was nothing she could do to avoid the foreclosure sale. Id. ¶¶ 15-38. Third, she brings an action for "detrimental reliance" against Wells Fargo, alleging that Plaintiff justifiably relied on the statements made by Wells Fargo's representatives to not pay the default amount. Id. ¶¶ 39-41. Fourth, she brings an action against Wells Fargo and ETS for cancellation of the trustee's deed, alleging that it is void "for the reasons set forth in this Complaint." Id. ¶¶ 42-47. Fifth, she brings a quiet title action against Wells Fargo, claiming that Wells Fargo has no legitimate interest in the property. Id. ¶¶ 48-51. Sixth, she brings an action for accounting against Wells Fargo and ETS, requesting "an accounting of all sums owed by Plaintiff to Wells Fargo up to and including the date of the foreclosure sale on the subject property." Id. ¶¶ 52-54. Seventh, she brings a claim for "injunctive relief," seeking an injunction barring Defendants from pursuing the

4

unlawful detainer action.  Id. ¶¶ 55-61.  Eighth, she brings a claim of intentional misrepresentation against Wells Fargo, alleging that in 2006, Joson falsely represented that by refinancing with World/Wachovia, Plaintiff would lower her interest rate and monthly payments.  Id. ¶¶ 62-77.  Ninth, Plaintiff brings a claim under section 17200 of California's Business and Professions Code ("section 17200"), alleging that Wells Fargo conducted unlawful, unfair, or fraudulent business practices by violating the Truth in Lending Act ("TILA") and through the allegedly false statements of Joson.  Id. ¶¶ 78-84.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed

to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and sufficiently plausible such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

**IV. DISCUSSION**

Plaintiff's claims fall into three categories. Her first, fourth, fifth, sixth, and seventh claims relate to the validity of the foreclosure sale and subsequent unlawful detainer action. Her second and third claims stem from her loan modification discussions with Defendant in 2010. Her eighth and ninth claims concern the origination of the loan in 2006. The Court addresses these three categories of claims separately.

**A. Plaintiff's Claims Challenging Foreclosure**

Defendant makes a number of arguments that Plaintiff's claims seeking to set aside the foreclosure sale are legally deficient. Among them, it argues that the validity of the foreclosure sale was already determined in the unlawful detainer action, and thus Plaintiff's Complaint represents an impermissible collateral attack on the state court's judgment in that action. MTD at 6.

"Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." U.S. v. Mendoza, 464 U.S. 154, 159 (1984). To prevail in an unlawful detainer action, a purchaser who acquired a property through a trustee sale must

6

prove the property was sold in accordance with section 2924 of the California Civil Code. <u>Malkoskie v. Option One Mortgage Corp.</u>, 188 Cal. App. 4th 968, 976 (Ct. App. 2010). As such, the California Superior Court necessarily found that Defendant's foreclosure sale of Plaintiff's property was proper when it entered judgment in favor of Defendant in the unlawful detainer action. Because both Plaintiff and Wells Fargo were parties to this action, the validity of the foreclosure sale has already been litigated by the parties, and Plaintiff cannot collaterally attack it here. Similarly, Plaintiff's seventh claim to enjoin Defendant from participating in the appeal of the unlawful detainer action is impermissible under the Anti-Injunction Act, 28 U.S.C. § 2283.

    For these reasons, Plaintiff's first, fourth, fifth, and seventh claims are DISMISSED WITH PREJUDICE. To the extent Plaintiff premises her section 17200 claim on the invalidity of the foreclosure, this claim is also DISMISSED WITH PREJUDICE. Because the foreclosure sale extinguished Plaintiff's debt, the Court also DISMISSES WITH PREJUDICE Plaintiff's sixth action for an accounting.

    **B.**    **Plaintiff's Loan Modification Claims**

    Plaintiff's second and third claims concern her attempts at loan modification in 2010. In her second claim, Plaintiff alleges Defendant committed negligent misrepresentation when its representatives allegedly told her in February 2010 that she would qualify for a modification if she defaulted on her loan and in September 2010 when they allegedly told her that there was nothing she could do to stop the foreclosure sale. Defendant argues that because under California law, negligent misrepresentation is a

7

species of fraud, Plaintiff must satisfy the heightened federal pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. MTD at 7. The Court agrees; claims sounding in fraud are subject to a higher pleading standard. Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

Defendant argues that the alleged February 2010 communication does not support a negligent misrepresentation claim. The Court agrees. The elements of negligent misrepresentation are: (i) a misrepresentation of material fact; (ii) without a reasonable ground for believing it to be true; (iii) with intent to induce the plaintiff's reliance on the fact misrepresented; (iv) ignorance of the truth and justifiable reliance on the misrepresentation by the plaintiff; and (v) resulting damage. Shamsian v. Atlantic Richfield Co., 107 Cal. App. 4th 967, 983 (Ct. App. 2003). To properly plead a negligent misrepresentation claim, Plaintiff must plausibly allege -- with the particularity required by Rule 9(b) -- that Defendant's representatives told Plaintiff that if she defaulted on her loan, she would qualify for a modification. She must allege that Defendant's representatives made this statement without reasonable ground for believing it to be true. She must allege she justifiably relied on this statement to her detriment. Plaintiff concedes that she has not made a mortgage payment since November 2009, which belies her allegation

1  that she stopped making payments in "reliance" on this alleged
2  statement.  Furthermore, Plaintiff's allegation that Defendant's
3  representative told her that she needed to show additional income
4  to qualify for a modification conflicts with her suggestion that
5  Defendant's representatives told her that if she defaulted, she
6  would qualify for a modification, as it suggests default was
7  merely one of a number of requirements for loan modification.

8  As for the September 2010 communication in which Defendant's
9  representatives allegedly told Plaintiff that there was nothing
10 she could do to stop the foreclosure sale, Defendant also argues
11 that Plaintiff has failed to plead with the required particularly.
12 MTD at 9.  Defendant alleges that Plaintiff has not established
13 that the alleged statement was false, because under California
14 Civil Code § 2924c, Plaintiff's time to tender to cure the default
15 expired on September 18, 2010, five days before the sale date.
16 Id.  As such, if Defendant told Plaintiff after September 17, 2010
17 that Plaintiff could no longer cure the default, such a statement
18 would be true.  Id.  Defendant also argues that this claim fails
19 because under Nymark v. Heart Federal Savings & Loan Ass'n, 231
20 Cal. App. 3d 1089, 1096 (1991), a lender does not owe a tort duty
21 of care to a borrower where the lender does not exceed the scope
22 of its conventional role of a lender.  MTD at 10.

23 The Court agrees with Defendant.  California's non-judicial
24 foreclosure law places a number of requirements on lenders seeking
25 to foreclose on a property.  See Cal. Civ. Code § 2924 et seq.
26 Under Nymark, however, a lender operating within the scope of its
27 traditional role does not have a general duty -- beyond these
28 statutory obligations -- to advise borrowers on the law.  To the

9

extent that Plaintiff alleges that Defendant's representative unintentionally misinformed Plaintiff of the alternatives to foreclosure, Plaintiff's claim fails as a matter of law.

Additionally, Defendant argues Plaintiff's third claim for detrimental reliance is not an independent claim, but rather an element of a number of different claims. MTD at 10. Plaintiff concedes this claim "should more appropriately be entitled Promissory Estoppel rather than Detrimental Reliance." MTD Opp'n at 3. Defendant responds that Plaintiff has failed to sufficiently plead a promissory estoppel claim. The elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 225 (Ct. App. 2011). Defendant argues that Plaintiff has failed to allege a clear and unambiguous promise or justified reliance on that promise. The Court agrees. Plaintiff does not allege that Defendant promised that if she defaulted on her loan, she would necessarily qualify for a modification; rather, she appears to allege that significant default was one of several requirements for placement in Defendant's in-house loan modification program. Therefore, Plaintiff has failed to allege a clear and unambiguous promise or justified reliance on that promise. Accordingly, Plaintiff's third claim is DISMISSED WITH LEAVE TO AMEND.

///

///

10

### C. **Plaintiff's Loan Origination Claims**

Plaintiff's eighth and ninth claims concern statements Joson allegedly made to her in 2006 during the origination of the loan. In her eighth claim, Plaintiff alleges that Defendant's representative intentionally misrepresented the terms of the loan prior to closing in 2006. Id. ¶¶ 62-77. Plaintiff's ninth claim is premised on this claim, as well as alleged violations of TILA. Id. ¶¶ 78-84. Defendant argues that any claim based on alleged misrepresentations made more than five years ago is barred by the applicable statutes of limitations.[4] MTD at 12. Defendant alleges that to the extent Plaintiff suggests these claims did not accrue until Plaintiff discovered them "within the past three years," she must allege specific facts supporting delayed accrual. Id. (citing California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1407 (9th Cir. 1995)). Defendant argues that because Plaintiff had an opportunity to inspect the loan documents upon closing in 2006, her failure to review them and discover the alleged fraud does not support delayed accrual. Id.

Defendant correctly represents the standard for pleading delayed accrual. "A plaintiff whose complaint shows on its face that his or her claim would be barred by the applicable orthodox statute of limitations, and who intends to rely on the discovery rule to toll the orthodox limitation period, must specifically

---

[4] Fraud claims are subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338. Claims under section 17200 are subject to a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. A claim of violation of TILA is subject to a three-year statute of repose. 15 U.S.C. § 1635(f).

11

plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. Mere conclusory assertions that delay in discovery was reasonable are insufficient." Camsi IV v. Hunter Tech. Corp., 230 Cal. App. 3d 1525, 1536-37 (Ct. App. 1991). In her Opposition, Plaintiff repeats the allegation in her Complaint that "[d]iscovery of the misrepresentation was made within 3 years from the filing of the Complaint." MTD Opp'n at 4. This response is unsatisfactory. Because Plaintiff has failed to allege specific facts that plausibly support delayed accrual, the Court DISMISSES WITH LEAVE TO AMEND Plaintiff's eighth claim. To the extent that Plaintiff's section 17200 claim is premised on fraud in loan origination or violation of TILA, this claim is also DISMISSED WITH LEAVE TO AMEND.

### D. HOLA Preemption

Defendant additionally argues that "[a]ll of Plaintiff's claims challenging the fees, terms and interest rate of the loan and those based on allegations of misconduct in connection with the foreclosure proceedings" are preempted by the Home Owners' Loan Act ("HOLA"). MTD at 17. Because many of Plaintiff's claims are also subject to dismissal as preempted under HOLA, the Court addresses this argument.

Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). HOLA gives the Office of Thrift

12

Supervision ("OTS") "broad authority to issue regulations governing thrifts." Id. at 1005 (citing 12 U.S.C. § 1464).

OTS, in turn, has promulgated regulations stating that OTS "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a) ("section 560.2"). Section 560.2 offers a framework for determining whether a state law claim is preempted by HOLA and its implementing regulations, and the Ninth Circuit has held that this framework controls. Silvas, 514 F.3d at 1005. Courts must first determine whether the state law is one of the enumerated types of laws expressly identified as preempted in section 560.2(b). Id. These include "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10).

If the state law is one of these enumerated types, "the analysis will end there; the law is preempted." Silvas, 514 F.3d at 1005. If not, the court should determine "whether the law affects lending." Id. If it does, the law is presumed to be preempted, subject to the exceptions provided by section 560.2(c). Id. Section 560.2(c) provides:

> State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [section 560.2(a)]:
>
> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. § 1462a(f);
>
> (4) Tort law;
>
> (5) Criminal law; and

13

>    (6) Any other law that OTS, upon review, finds:
>
>    >    (i) Furthers a vital state interest; and
>    >
>    >    (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c). These exceptions are "to be interpreted narrowly." Silvas, 514 F.3d at 1005.

Defendant argues that Plaintiff's claims are preempted under section 560.2(b)(10). MTD at 17. Wells Fargo argues that Plaintiff's chief allegations of wrongdoing -- that Defendants committed fraud, acted in bad faith, or otherwise violated the law during the loan modification discussions and the foreclosure procedure -- concern "processing" or "servicing" of the mortgage and thus compel preemption. Id. Plaintiff does not offer a cogent response.

While HOLA does preempt some of Plaintiff's claims, HOLA preemption is not as broad as Wells Fargo argues it is. In Silvas, the Ninth Circuit focused not on the nature of the cause of action allegedly preempted, but rather on the "functional effect upon lending operations of maintaining the cause of action." Naulty v. GreenPoint Mortg. Funding, Inc., No. 09-1542, 2009 WL 2870620, at *4 (N.D. Cal. Sep. 3, 2009). "The question was rather whether an application of a given state law to the activities of federal savings associations would 'impose requirements' regarding the various activities broadly regulated by the OTS." Id. Courts have thus interpreted Silvas to not preempt all state law causes of action arising out of loan modification and/or foreclosure proceedings, but only those that

14

impose new requirements on the lender. E.g., Susilo v. Wells Fargo Bank, N.A., No. 11-1814, 2011 WL 2471167, at *4-6 (C.D. Cal. June 21, 2011) (denying bank's motion to dismiss borrower's breach of contract, negligence, bad faith, and fraud claims as preempted by HOLA).

To the extent that Plaintiff's claims are premised on fraud or promises made by Wells Fargo, such claims are not necessarily preempted, because the only "requirement" they impose on federal savings banks is that they be held responsible for the statements they make to their borrowers. If these causes of action were preempted, federal savings associations would be free to lie to their customers with impunity. On the other hand, Plaintiff's allegations that Wells Fargo failed to use proper care or comply with industry standards essentially seek to impose new requirements on the lender and are thus preempted by HOLA. As such, Plaintiff's negligent misrepresentation claim is preempted by HOLA.

In sum, Plaintiff's Complaint falls far short of federal pleading standards. While Plaintiff is granted leave to amend her Complaint to address the above shortcomings, she is put on notice that any claims dismissed on a subsequent motion to dismiss will be dismissed WITHOUT LEAVE TO AMEND. The Court will only grant additional leave to amend the complaint if Plaintiff files a motion under Rule 15(a)(2) of the Federal Rules of Civil Procedure establishing that justice requires it.

Furthermore, the Court puts Plaintiff and her attorney on notice that under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and

15

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The Court may impose such sanctions sua sponte.  <u>Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.</u>, 210 F.3d 1112, 1118 (9th Cir. 2000).  If Plaintiff makes any frivolous arguments in her amended complaint or pleads any clearly meritless claims, she and her counsel may be subject to sanctions under 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, the Court's local rules, and the Court's inherent power.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss filed by Defendant Wells Fargo Bank, N.A.  Plaintiff Lorda Rumbaua's first, fourth, fifth, sixth, and seventh claims are DISMISSED WITH PREJUDICE.  Plaintiff's second, third, eighth, and ninth claims are DISMISSED WITH LEAVE TO AMEND.  The Court DENIES Defendant's motion to strike as moot in light of this Order.  Plaintiff is granted thirty (30) days' leave to file an amended complaint.  If Plaintiff fails to file an amended complaint within this time frame, this action will be dismissed WITH PREJUDICE.

IT IS SO ORDERED.

Dated: August 25, 2011

UNITED STATES DISTRICT JUDGE

16